# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| WESLEY EDWARDS § | |
| § | Civil Action No. 4:18-CV-372 |
| v. § | (Judge Mazzant/Judge Nowak) |
| § | |
| COMMISSIONER, SSA § | |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On August 30, 2019, the report of the Magistrate Judge (Dkt. #18) was entered containing proposed findings of fact and recommendations that the final decision of the Commissioner of Social Security Administration be affirmed. Having received the report of the Magistrate Judge, having considered Plaintiff's Objections (Dkt. #19), and Defendant's Response (Dkt. #21), and having conducted a de novo review, the Court is of the opinion that the Magistrate Judge's report should be adopted.

## OBJECTIONS TO REPORT AND RECOMMENDATION

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2)-(3). Objections to a report must specifically identify portions of the report and the basis for those objections. Fed. R. Civ. P. 72(b); *see also Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (explaining that if the party fails to properly object because the objections lack the requisite specificity, then de novo review by the court is not required.). In other words, a party objecting to a magistrate judge's report must specifically identify those findings to which he or she objects.

Moreover, the District Court need not consider frivolous, conclusory, or general objections. *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

Plaintiff argues that the Magistrate Judge erred in finding that the ALJ properly (1) considered the functional limitations of psychological consultative examiner, Dr. Levi Armstrong ("Dr. Armstrong"); and (2) determined that Plaintiff can perform other work in the national economy (Dkt. #19 at p. 5).

***Findings of Dr. Armstrong***

Plaintiff first objects that, although the Magistrate Judge acknowledged the findings of Dr. Armstrong, she failed to note their significance and the conflict between Dr. Armstrong's findings and the opinion of State Agency Medical Consultant ("SAMC") Dr. James B. Murphy, Ph.D. ("Dr. Murphy") (Dkt. #19 at pp. 3–4). Dr. Armstrong completed a consultative examination of Plaintiff on November 24, 2015 (TR pp. 375–83), and opined as to Plaintiff's functional limitations:

> [Plaintiff's] variable memory abilities and processing speed impairment *may interfere* with his ability to sustain attention for extended periods of time, as well as learn, remember, and carry out instructions. He appears to have more neurobehavioral impairment, possibly pseudobulbar affect and executive dysfunction. These deficits *may interfere* with his ability to tolerate the normal pressures of competitive work environments. He *may also be exhibiting* dysautonomia secondary to his stroke, which *may interfere* with his ability to consistently tolerate stress or certain physical work environments. *However, this should be confirmed by a physician*. He does not appear to have any significant communication deficits. He appears fully capable of managing his own finances. Physical capacity is deferred to medical judgment.

(TR p. 381) (emphasis added). Dr. Armstrong did not opine on or otherwise determine the applicability of any specific functional limitations, finding only that Plaintiff's impairments may interfere with his functioning (TR p. 381). Thereafter, on December 28, 2015, Dr. Murphy

2

reviewed Plaintiff's medical records—including the examination of Dr. Armstrong—in assisting in the reconsideration-level agency determination of Plaintiff's mental conditions and functional limitations (TR pp. 82–84). Importantly, Dr. Murphy concluded that Plaintiff "can understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work setting" (TR p. 84).

Notwithstanding, Plaintiff posits that a conflict exists between the findings of Dr. Armstrong and Dr. Murphy. In support of such argument, Plaintiff avers that the hypotheticals posed to the Vocational Expert ("VE") illustrate the conflict between Dr. Armstrong and Dr. Murphy because a hypothetical posed by Plaintiff's counsel on cross examination, which included portions of the language from Dr. Armstrong's opinion, yielded a response that no jobs could be performed in the national economy (Dkt. #19 at p. 4; TR pp. 60–61). Plaintiff's argument is flawed. To reiterate, contrary to Plaintiff's repeated assertions, Dr. Armstrong made no definitive conclusions as to Plaintiff's functional limitations; instead Dr. Armstrong indicated that Plaintiff's deficits "may interfere" with the mental demands of competitive employment (TR p. 381). Moreover, the hypotheticals posed by Plaintiff's counsel presuppose Dr. Armstrong's limitations *will* interfere with Plaintiff's abilities, rather than potentially interfere, as the VE was instructed to assume "if we have an individual who has the following circumstances" and/or "has deficits which interfere" (TR 61). Plaintiff attempts to interpret Dr. Armstrong's findings into specific vocational limitations; but Dr. Armstrong fell short of doing so. As explained in the report:

> Although Plaintiff perceives a conflict between Dr. Murphy's findings and Dr. Armstrong's findings, it is clear the ALJ expressly did not consider such opinions to be in conflict…. Rather than showing a significant conflict between Dr. Murphy and Dr. Armstrong, the ALJ indicates that he considered both opinions and found such determinations to be consistent and/or support Dr. Murphy's conclusion.

3

(Dkt. #18 at pp. 15–16) (internal quotations and citations omitted). Plaintiff's objection is overruled.

*Identification of Jobs in the National Economy Consistent with Plaintiff's RFC*

Plaintiff raises two arguments in opposition to the report's conclusion at step five (Dkt. #19 at pp.4–6). Plaintiff first argues that a Residual Functional Capacity ("RFC") limiting Plaintiff to simple work is inconsistent with level three reasoning (Dkt. #19 at pp. 4–5). Plaintiff points to an excerpt from the SSA, Vocational Expert Handbook in arguing that simple work is inconsistent with level three reasoning (Dkt. #19 at p. 5). Notably, the Vocational Expert Handbook guides vocational experts in identifying conflicts to the ALJ. *See Courtney v. Comm'r, SSA*, 894 F.3d 1000, 1005, n.2 (8th Cir. 2018). The handbook does not direct the ALJ or the ALJ's determination; indeed, the excerpt Plaintiff references merely directs the VE to "[b]e prepared to explain how the hypothetical individual could perform [a job with reasoning level 3]" as "[i]t could be argued that occupations requiring reasoning level 3 are too complex for an individual limited to 'simple' or 'repetitive' tasks." SSA, Office of Hearings Operations, Office of the Chief ALJ, *Vocational Expert Handbook*, at 39 & n.52 (Aug. 2017).

In the instant the case, the ALJ asked the VE to identify jobs Plaintiff could perform and inquired into the VE's consistency with the DOT (Tr p. 59). The VE testified that Plaintiff could perform the jobs of order clerk, which as has a reasoning level of three, and optical goods assembler and lens inserter, both of which have reasoning levels of one (TR p. 59). The VE further confirmed that his testimony was consistent with the Dictionary of Occupational Titles ("DOT") (TR p. 59). SSR 00-4p only requires an ALJ to resolve apparent conflicts between the VE testimony and the DOT. As the report explains—citing to numerous district and appellate courts—a job requiring a reasoning level three is not necessarily in conflict with an RFC limited to simple

4

and unskilled work (Dkt. #18 at pp. 20–21). Although the Commissioner and other courts have recognized that such an argument could be made, here, Plaintiff has proffered no argument or authority that Plaintiff cannot perform the demands of an order clerk given his limitation to simple work.

Furthermore, even if Plaintiff could not perform the position of order clerk, the VE further identified two positions at a reasoning level of one that Plaintiff could perform (TR p. 59). Although Plaintiff objects to the Magistrate Judge's finding that he did not challenge the consistency of reasoning level one positions and an RFC limitation to simple work (Dkt. #19 at p. 5), upon independent review of Plaintiff's briefing, the Court discerns no argument that jobs identified with a reasoning level one are inherently inconsistent or in conflict with an RFC limited to simple and routine tasks (Dkt. #14 at pp. 12–13). Instead, Plaintiff's argument is clearly directed at the classification of order clerk as an "unskilled" position and the *physical* RFC classifications of the final assembler and lens inserter positions. In his objections, Plaintiff reiterates such argument, asserting that "these jobs are now beyond the unskilled level" (Dkt. #19 at p. 5). Specifically, Plaintiff relies on information from the Occupational Outlook Handbook in arguing that all three positions require moderate-term-on-the-job-training and are thus not unskilled work (Dkt. #19 at p. 5). However, as explained by the Magistrate Judge:

> The Commissioner's applicable ruling expressly imposes an affirmative duty on ALJs to investigate and resolve apparent conflicts with the DOT, not other sources of job information. According to the DOT, each of the three jobs identified by the ALJ have an SVP of 2 and are classified as having strength demands of sedentary work, which are consistent with Plaintiff's vocational limitation to unskilled work and physical RFC limitations. Because no apparent DOT conflict arose, the ALJ satisfied his investigatory obligations under SSR 00–4P. Plaintiff has not cited any binding authority for the proposition that an ALJ commits reversible error when he satisfies his obligations under SSR 00–4P to investigate potential conflicts with the DOT yet fails to consult other sources of job information…for potential conflicts.

(Dkt. #18 at pp. 21–22) (internal quotations and citations omitted).  Plaintiff's objection is overruled.

## CONCLUSION

Having considered Plaintiff's Objections (Dkt. #19), all other relevant filings, and having conducted a de novo review, the Court adopts the Magistrate Judge's Report and Recommendation (Dkt. #18) as the findings and conclusions of the Court.

It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

**SIGNED this 20th day of September, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE